HONORABLE ROBERT S. LASNIK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BENNETT HASELTON, an individual; PEACEFIRE, INC., a Washington corporation

Plaintiff,

vs.

QUICKEN LOANS, INC., a Michigan corporation; and JOHN DOES, I-X

Defendant.

CIVIL ACTION NO. C07-1777 RSL

**DEFENDANT QUICKEN LOANS, INC.'S MOTION FOR DISMISSAL DUE TO LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 56 AND 12(C), OR FOR RELIEF FROM A FINAL ORDER PURSUANT TO FED. R. CIV. P. 60(b)**

**Oral Argument Requested**

**NOTE ON MOTION CALENDAR:**
February 19, 2010

MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b)
Case No. C07-1777 RSL

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

## I. INTRODUCTION

Since this Court last examined this case, the Ninth Circuit Court of Appeals has decided three cases on the CAN-SPAM Act standing issue, establishing rigorous requirements and providing guidance to district courts. As *Gordon v. Virtumundo*, 575 F.3d 1040 (9th Cir. 2009), makes clear, the self-described "spammer suer" Plaintiff Bennett Haselton falls far short of meeting the Ninth Circuit's narrow standing test. *See, e.g., id*. at 1057 (holding the CAN-SPAM Act was not enacted to support a litigation mill for entrepreneurs like plaintiff). Indeed, the facts the Ninth Circuit found dispositive in applying its new test to deny the *Virtumundo* plaintiff standing are virtually identical to those present here. Plaintiffs plainly lack standing under *Virtumundo*, and thus lack subject matter jurisdiction for their claims. Defendant accordingly requests that this Court deny Plaintiffs standing under the CAN-SPAM Act.

## II. STATEMENT OF FACTS

**A.     The Parties.**

**1.     Quicken Loans.**

Defendant Quicken Loans, Inc. ("Quicken Loans") is in the business of providing loans and mortgages to consumers, and it has a substantial online presence. It did not send any of roughly 115 e-mails at issue in this case. Like many other businesses, to identify interested customers Quicken Loans purchases customer lists from third parties who process information individuals voluntarily submit on various third party websites. Quicken Loans' loan officers may then call potential customers at the number the customer provided to discuss the mortgage products the customer stated he or she might be interested in obtaining. *See* Dkt. 26, Exh. O.

**2.     Bennett Haselton And Peacefire, Inc.**

Plaintiff Bennett Haselton is the creator, president, managing officer, sole proprietor, sole shareholder, and sole employee of Peacefire, Inc. ("Peacefire"). Dkt. 13, ¶ 3; Dkt 26, Ex. A, Deposition of Bennett Haselton ("Haselton Dep.") 8:6-10, 10:16-11:18, 42:12-13. Mr. Haselton runs Peacefire out of his apartment, and Peacefire provides neither access to the Internet nor personal e-mail accounts. *See id*. 30:4-31:2, 34:9-35:24, 86:12-20. Instead, it simply creates and

MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION
FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b) - 1
Case No. C07-1777 RSL

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

maintains various websites. Peacefire's home website—peacefire.org—provides information about how individuals can disable Internet content filtering software, primarily used to restrict minors' access to objectionable websites. *See id.* at 12:4-7; Dkt 26, Exh. E. Separate from his Peacefire website, Haselton hosts multiple websites which individuals can use to surreptitiously view content from other websites. Haselton Dep. 13:12-14:10, 29:13-23, 88:6-9, 90:23-92:2; Dkt. 26., Exh. B. Plaintiffs have no "subscribers" to any of these websites. Dkt. 26, Exh. F.

### B. Plaintiffs Made No Effort To Avoid, Block, Or Delete The Emails.

Plaintiffs do not use any e-mail filtering program. Haselton Dep. 109:22-110:24. In fact, to grow the litigation "business [he's] in," Haselton harvests unsolicited e-mails by intentionally configuring his e-mail program to collect all e-mails containing any variation of a random jumble of characters sent to the peacefire.org domain. *Id*. 74:24-75:4; Dkt. 26, Exh. J. In other words, Haselton makes an effort to maximize his collection of email, and even goes so far as to intentionally collect e-mails sent to accounts that do not exist.

### C. Plaintiffs' Purposefully Sought To Collect Emails.

Haselton, a self described "spammer-suer," has brought over 140 spam-related lawsuits and won thousands of dollars in default judgments. Haselton Dep. 8:21-9:8; Dkt. 26, Exh. I. As stated above, Haselton harvests e-mails for his lawsuits by not using any e-mail filtering program, and by intentionally configuring his computer to collect as many e-mails as possible sent to the peacefire.org domain. Haselton Dep. 74:24-75:4, 109:22-110:24. Despite these efforts, Haselton only collected approximately 115 emails sent by third parties to Peacefire over a three year period of time, that Plaintiffs now attempt to attribute to Quicken Loans.

To further his litigation business, Haselton engages in elaborate schemes to create litigation defendants. *See* Dkt. 1, ¶¶ 3.6, 3.7. For example, Haselton may enter a never before used e-mail address on a company's website for the sole purpose of collecting any unsolicited e-mails sent to that unique address. Haselton Dep. 75:21-76:4; 105:21-106:10; *see* Dkt. 26, Exh. M. In the scheme relevant to this case, after allegedly receiving unsolicited e-mails from a third party, Haselton voluntarily clicked on the link contained in the message and entered false

MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION
FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b) - 2
Case No. C07-1777 RSL

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

personal data on a website owned and operated by a third party (*not* Quicken Loans). Haselton Dep. 42:2-11, 60:16-62:9, 65:8-23, 70:18-71:10; Dkt. 26, Exhs. N, P. Haselton sometimes included false information related to a fake property for which he was purportedly seeking to obtain a mortgage, and manufactured at least 14 phone numbers in furtherance of this effort as well. *See* Dkt. 26, Exhs. O, P. A person who calls a phone number Haselton submitted is connected to a voicemail that does not identify Haselton as the owner, but may include Haselton's voice disguised with a foreign accent. Haselton Dep. 16-21. Haselton then returns the call to confront the caller. *Id*. at 69:20-70:8. In the case of Quicken Loans, each caller was a loan officer who believed he was connecting with a legitimate lead based on the detailed information, including sought for mortgage amount, submitted by Haselton to third parties, who in turn sold potential customer lists to Quicken Loans. *See* Dkt. 26, Exh. O.

### D. Any Network Harm From Receipt of E-mails Is Borne By Third Parties.

Haselton does not own, physically control, configure, or operate any of the servers he uses; all such servers are owned and operated by other unrelated businesses at other locations. Haselton Dep. at 85:813, 86:2-87:6, 88:12-14. The cable connection to Haselton's apartment, which is also the Peacefire office, is provided by Verizon. *Id*. at 38:15-21. Haselton's e-mail service is provided by an unrelated third party, Speakeasy, Inc., and all peacefire.org e-mails are forwarded to a speakeasy.net address. *Id.* at 36:20-37:2, 38:9-25.

### III. PROCEDURAL BACKGROUND.

Plaintiffs filed this case on October 9, 2007, seeking damages under the CAN-SPAM Act, and alleging that Defendant "conspired" to violate the Act by buying contact information from the third parties. Dkt. 1, ¶¶ 3.6-3.10. Defendant did not send any of the e-mails at issue, denied that it could be liable for the acts alleged, and argued that while CAN-SPAM Act guidance was sparse, Plaintiffs lacked standing to bring their claims under the Act. Dkt. 5. On October 14, 2008, this Court granted Plaintiffs standing to pursue their CAN-SPAM Act claims. Dkt. 29. On October 28, 2008, Defendant timely filed a Motion for Reconsideration of the standing order. Dkt. 30. On November 24, 2008, this Court denied Defendant's motion,

MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION
FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b) - 3
Case No. C07-1777 RSL

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Dkt. 38, but on December 11, 2008, acknowledged the circuit split on the standing issue and granted Defendant's Motion for Interlocutory Appeal and stayed this case. Dkt. 44.

On December 23, 2008, Defendant filed a petition for permission to appeal to the Ninth Circuit on the standing issue. Declaration of James. E. Howard ("Howard Decl."), ¶ 2. On March 13, 2009, the Ninth Circuit stayed its decision on whether to hear Defendant's appeal until after its decision in *Virtumundo*. *Id.*, Exh.1. On August 6, 2009, the Ninth Circuit decided *Virtumundo*. The Court recognized the lack of guidance that had been available and created a detailed and restrictive test for determining CAN-SPAM Act standing. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009). The Ninth Circuit also decided two other cases that were pending at the time this Court made its standing ruling by applying the restrictive *Virtumundo* test to deny standing. *See Asis Internet Services v. Azoogle.com, Inc.*, 2009 WL 4841119 (9th Cir. 2009); *Ferguson v. Active Response Group*, 2009 WL 3229301 (9th Cir. 2009). On December 10, 2009, the Ninth Circuit denied Defendant's petition for permission to appeal, placing this case back before this Court, this time with a developed methodology for assessing CAN-SPAM Act standing. On January 4, 2010, the parties submitted a joint status report that recognized the need for additional briefing on the standing issue. Dkt. 48.

## IV. AUTHORITY & ARGUMENT

### A. Plaintiffs Inarguably Lack Standing Under *Virtumundo*.

As a jurisdictional requirement, standing is a "threshold question in every federal case," *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Warth v. Seldin*, 422 U.S. 490, 498 (1975), and a plaintiff invoking federal jurisdiction has the burden of establishing it. *See Brosnan v. Alki Mortgage, LLC*, No. C07-4339JL, 2008 WL 413732, at *1 (N.D. Cal. Feb. 13, 2008). Federal courts at every level are required to closely examine jurisdictional issues such as standing to assert a claim, and may even do so *sua sponte* if necessary. *See id.* (citing *B.C. v. Plumas Unified School Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999)). It is critical to answer this standing question correctly since it is a fundamental component of federal jurisdiction; if a federal court determines at any time that it lacks subject matter jurisdiction the court must

MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION
FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b) - 4
Case No. C07-1777 RSL

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

dismiss the action. *See id.* (citing FRCP 12(h)(3)).

Under these circumstances, this motion could be decided pursuant to Fed. R. Civ. P. 56 or Fed. R. Civ. P. 12(c), as standing issues may be examined at any time, and Plaintiffs cannot come close to carrying their burden to show standing under *Virtumundo*. Alternatively, given the intervening direction from the Ninth Circuit, Fed. R. Civ. P. 60(b) relief from this Court's order granting Plaintiffs standing is also proper. *See Miller v. Gammie*, 335 F.3d 889, 990 (9th Cir. 2003) (*en banc*). When an intervening change in law occurs the district court has authority to reverse a previous order to avoid a subsequent overruling. *Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993). When this Court granted Plaintiffs standing, "the case law regarding the relevant legal standards under the CAN-SPAM Act [was] 'scant'" *Virtumundo*, 575 F.3d at 1048-1049 (citations omitted); *see* Dkt. 44, pp. 2-3. In *Virtumundo*, the Ninth Circuit dealt with this lack of direction by establishing a new mode of analysis for determining whether a plaintiff has CAN-SPAM Act standing. *See also Azoogle.com.*, 2009 WL 4841119; *Ferguson*, 2009 WL 3229301; *Gordon v. Subscriberbase Holdings, Inc.*, 2009 WL 4824788 (E.D. Wash 2009).

In initially granting Plaintiffs standing pre-*Virtumundo*, this Court drew the following conclusions based on what little authority existed at the time:

> (1) the CAN-SPAM Act defines "Internet access service" broadly enough to include even most website owners;[1]
> (2) evidence of harms that might affect a plaintiff as an IAS, without evidence of causation, is sufficient;[2]
> (3) a plaintiff's failure to take adequate precautions and/or his affirmative efforts that lead to the harms alleged need not be considered at the standing phase;[3] and
> (4) a court need not give significant weight to a plaintiff's reliance on third parties when determining whether the plaintiff was sufficiently harmed.[4]

In *Virtumundo*, however, the Ninth Circuit established a new, much narrower test, and in the process rejected the above points, instead holding that:

> (1) the CAN-SPAM Act defines "Internet access service" narrowly and

---

[1] Dkt 29, pp. 3-5, fn. 2.
[2] *Id.*, pp. 5-6.
[3] *Id.*, p. 6.
[4] This conclusion is implicit in this Court's order. *Id.*, pp. 5-6.

MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b) - 5
Case No. C07-1777 RSL

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

requires more than merely enabling access to Internet content and e-mail, on a superficial level, 575 F.3d at 1051-52;

(2) a plaintiff must present evidence that the harms alleged were caused by the type of e-mail practices regulated by the Act, and not by other potential causes, *Id* at 1054; and

(3) a plaintiff's failure to take adequate precautions and/or his affirmative efforts that lead to the harms alleged should be considered, *Id.* at 1052, 1056-57; and

(4) significant weight is given to a plaintiff's reliance on third parties when analyzing whether the plaintiff was sufficiently harmed. *Id.* at 1055-57.

The differences between the Court's prior analysis and the new mode of analysis recently established by the Ninth Circuit would result in a different outcome if applied to the facts of this case. The issue of standing is a threshold question of subject matter jurisdiction that is reviewed *de novo*. *Virtumundo*, 575 F.3d at 1047, 1048. Accordingly, all parties would benefit from this Court analyzing the standing issue now under the Ninth Circuit's new *Virtumundo* analysis.

**B. Plaintiffs Do Not Have Standing Under the *Virtumundo* Analysis.**

It is of course Plaintiffs' burden to show that they have standing to trigger federal jurisdiction. *Virtumundo* set a high bar for a private plaintiff seeking standing under the CAN-SPAM Act. In fact, every court that has faced the question since *Virtumundo* has denied the plaintiff standing. *See Azoogle.com*, 2009 WL 4841119; *Ferguson*, 2009 WL 3229301; *Subscriberbase Holdings*, 2009 WL 4824788. For the reasons outlined below, this Court should apply the new mode of analysis dictated by *Virtumundo*, and should conclude that Plaintiffs do not have standing to pursue their CAN-SPAM Act claims, even on the current record.

**1. Plaintiffs Are Not A Bona Fide "Internet Access Service."**

As an initial matter, under *Virtumundo* Plaintiffs do not even qualify as a bona fide Internet Access Service, and therefore lack standing on this basis alone. At the time this Court ruled on Plaintiffs' standing, the Ninth Circuit had not spoken to the issue of who is an "Internet access service" ("IAS") within the meaning of the CAN-SPAM Act. *See* 575 F.3d at 1051. Consequently, courts, including this one, were left adrift and were forced to interpret this ambiguous term with little guidance from the appellate courts. The Ninth Circuit supplied that missing direction by developing a new and much more restrictive analysis for determining who

MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION
FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b) - 6
Case No. C07-1777 RSL

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

is an IAS in *Virtumundo*. *Id*.

This Court previously defined IAS similarly to several other district courts, which had applied a broad definition of IAS in evaluating CAN-SPAM Act standing. *See* Dkt. 29, pp. 4-5 (*citing Facebook, Inc. v. ConnectU LLC*, 489 F.Supp.2d 1087, 1094 (N.D. Cal. 2007); *MySpace, Inc. v. The Globe.com, Inc.*, 2007 WL 1686966 (C.D. Cal. 2007); *Gordon v. Virtumundo, Inc.*, 2007 WL 1459395 at *8 (W.D. Wash. 2007)). Indeed, as this Court observed, one district court had broadly held that "any e-mail provider, and even most website owners" would qualify as an IAS. *See* Dkt. 29, p. 4, fn. 2, quoting *MySpace*.

The Ninth Circuit concluded that this was as an "overly broad" interpretation of IAS. *See Virtumundo* at 1051-1052 (rejecting the broad IAS definition in *Facebook*, 489 F.Supp.2d at 1094, and *MySpace*, 2007 WL 1686966); *also compare id*. at 1052 (holding the plaintiff did "not fit any reasonable definition of its new restrictive "Internet access service" provider test) *with* Dkt. 29, p.4, fn. 2 (relying on *Virtumundo* district court opinion for its broad definition of IAS). The Ninth Circuit emphasized that merely providing "a service that enables users to access" online content is not enough, nor is providing e-mail accounts alone sufficient. *Id*. While on a "superficial level" these services meet the IAS definition, the Ninth Circuit held that "[s]tanding under the CAN-SPAM Act requires more." *Id*.; *see id*. at 1052 ("arguments of technical compliance with this standing component, without any regard for the overarching congressional purpose, are not compelling.")

A review of the facts at issue in *Virtumundo* on this point is telling. The *Virtumundo* plaintiff, Gordon, asserted that he was an IAS because he enabled users to access Internet content and e-mail through his domain and the server space he leased. The Ninth Circuit noted that Gordon was a registrant of a domain name which he, through a third party, hosted on leased server space. *Id*. at 1052. He neither had physical control over nor access to the hardware, which a third party owned, housed, maintained and configured. *Id*. Gordon's service appeared to be limited to using a virtual control panel, which he accessed via an ordinary Internet connection through a third party ISP, to set up e-mail accounts and to execute other

MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION
FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b) - 7
Case No. C07-1777 RSL

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

administrative tasks. *Id*. Third party Verizon enabled his online access and third party GoDaddy provided the service that enabled him to create e-mail accounts, register domain names, and build personalized web pages for himself and on behalf of others. *Id*. Based on these facts, "Gordon d[id] not fit any reasonable definition of 'Internet access service' provider." *Id*.

The facts of this case directly parallel those in *Virtumundo*; this is not surprising, as Plaintiffs' counsel were also district court counsel for the "spammer suer" in *Virtumundo*. As in *Virtumundo*, Haselton does not own or operate any of his own servers. Haselton Dep. at 85:813, 86:2-87:6, 88:12-14. The cable connection to Haselton's residence, which serves as the Peacefire office, is provided by Verizon. *Id.* at 38:15-21. Haselton's e-mail service is provided to him by third party Speakeasy, Inc., and all peacefire.org e-mails are forwarded to a speakeasy.net address. *Id.* at 36:20-37:2, 38:9-25. As in *Virtumundo*, Haselton simply uses these third party services for himself and to create websites that others can access. *See id.* at 1052. As the Ninth Circuit ruled in *Virtumundo*, while these third party services might have a compelling argument that they are IAS providers within the meaning of the CAN-SPAM Act, Plaintiffs do not. *See id.*

Moreover, even if Plaintiffs were an IAS in a general sense, they are not a *bona fide* IAS, as is required for standing. The Ninth Circuit determined that Congress's intent was to "exclude plaintiffs who, despite certain identifying characteristics, did not provide the actual, *bona fide* service of a legitimate operation." *Id*. at 1050. With this in mind, the Ninth Circuit was "troubled by the extent to which Gordon fail[ed] to operate as a *bona fide* e-mail provider," noting his failure to take even minimal efforts to avoid or block spam messages, instead devoting his resources to accumulating spam through a variety of means to fuel litigation. *Id.* at 1052.

Those same precise concerns exist here. Haselton and Peacefire do not use any e-mail filtering program. Haselton Dep. 109:22-110:24. In fact, Haselton intentionally configures his e-mail program to receive as many e-mails as possible, even for e-mail accounts that do not exist. *Id*. 74:24-75:4. Further, Plaintiffs' efforts are directly aimed at fueling Haselton's litigation business, contrary to Congress's intent. *See, e.g.,* Haselton Dep. 8:21-9:8; Dkt. 26, Exh. I. The

MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION
FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b) - 8
Case No. C07-1777 RSL

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

Ninth Circuit in *Virtumundo* concluded that Congress's intent in granting only a limited private right to standing was to limit enforcement actions to those "well-equipped to efficiently and effectively pursue legal actions against persons engaged in unlawful practices and enforce federal law for the benefit of all consumers." *Id.* at 1050. Haselton's litigation efforts stray far from Congress's intent; Haselton did not sue the companies who actually sent the e-mails at issue in this case, rather, he chose the larger pocket of a company that has never sent Haselton a single e-mail. Haselton's 140 lawsuits and admitted business as a litigation generator to collect money damages shows that his chief purpose is not to "enforce federal law for the benefit of all consumers." *Id.* Haselton is not a *bona fide* IAS based on these facts under the *Virtumundo* test.

### 2. Plaintiffs Were Not Adversely Affected By A Violation.

As the Court is aware, a plaintiff must also be "adversely affected by" a violation of the Act for standing—and subject matter jurisdiction—to exist. When this Court ruled in its October 14, 2008 order that Plaintiffs met the "adversely affected by" prong because they produced sufficient evidence that they suffered IAS-specific harms, little guidance existed in this or other Circuits. Dkt. 29, pp. 5-7. The Ninth Circuit has supplied that missing guidance in its new *Virtumundo* analysis, and has emphasized that this prong requires more than merely suffering IAS-specific harms. Rather, a plaintiff must prove that the harms alleged were in fact caused by a violation of the Act. Plaintiffs' failure to prove actual harm caused by the small number of emails at issue (approximately 115 over roughly 3 years); affirmative efforts to collect the e-mails upon which they now base their claim; and total reliance on third party IASs to provide services, all show that Plaintiffs do not satisfy the "adversely affected by" prong.

First, Plaintiffs present insufficient evidence that the harms they allege were caused by the type of e-mail practices regulated by the CAN-SPAM Act, and not by other potential causes. The Ninth Circuit made clear that defining the type of harm is only one part of this adversely affected prong; causation is also an element of standing for which the plaintiff has the burden of proof. *Virtumundo* at 1054. In other words, at a bare minimum, the plaintiff must present a showing that the identified concerns are linked in some meaningful way to unwanted spam and,

MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION
FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b) - 9
Case No. C07-1777 RSL

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

in turn, represent actual harm. *Id.* ("evidence of what could be routine business concerns and operating costs is not alone sufficient to unlock the treasure trove of the CAN-SPAM Act's statutory damages."). Among other things, the Ninth Circuit expects "a legitimate service provider to secure adequate bandwidth and storage capacity and take reasonable precautions, such as implementing spam filters, as part of its normal operations." *Id.* Courts "should take an especially hard look at the cited harm if it suspects at the outset that a plaintiff is not operating a *bona fide* Internet access service…" *Id.*

Plaintiffs can be directly inserted into *Virtumundo*'s discussion of this key causation element with little more than a name change. They present no evidence that would allow this Court to distinguish their supposed harm from the ordinary costs and burdens associated with operating an IAS (and do not even operate an IAS). *See id.* at 1054. Plaintiffs present no evidence that they secured adequate bandwidth or storage capacity to run their services. Most notably, Plaintiffs present no evidence that they took reasonable precautions to avoid, block, or delete the e-mails at issue. To the contrary, Plaintiffs did not use spam filters and sought over a multi-year period to harvest the small number of emails that they now complain caused them harm. *Compare* Haselton Dep. 74:24-75:4, 75:21-76:4, 105:21-106:10, 109:22-110:24 and Dkt. 26, Exhs. J, M, P, with *Virtumundo*, 575 F.3d at 1054 ("We expect a legitimate service provider to…take reasonable precautions, such as implementing spam filters, as part of its normal operations."). Plaintiffs fail to demonstrate any relationship between the alleged harm and the at-issue e-mails, or even how the e-mails contributed to a larger problem. *See Virtumundo,* 575 F.3d at 1054. Plaintiffs cannot meet the Ninth Circuit's standard with these facts.

Indeed, Plaintiffs' failure to take adequate precautions to prevent the at-issue e-mails and their affirmative efforts to obtain such e-mails demonstrate that they were not adversely affected by the e-mails, as is required for standing. In determining whether a plaintiff has been adversely affected by conduct regulated by the CAN-SPAM Act, "it is highly significant that the burdens [plaintiff] complains of are almost exclusively self-imposed and purposefully undertaken." *Virtumundo* at 1057. For example, the Ninth Circuit found it "compelling" that despite Gordon's
MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION
FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b) - 10
Case No. C07-1777 RSL

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

claims that he was harmed by being "forced to wade through *thousands* of e-mails" that clogged his service, "Gordon purposefully refuse[d] to implement spam filters in a typical manner or otherwise make any attempt to block allegedly unwanted spam or exclude such messages from users' e-mail inboxes." *Id*. Furthermore, in discussing eerily similar facts, the court emphasized:

> "Gordon's claimed harms almost exclusively relate to litigation preparation, not to the operation of a *bona fide* service. Gordon made no real effort to avoid, block, or delete commercial e-mail, but instead has voluntarily assumed the role of a spam sleuth. He expends time and resources seeking out and capturing massive volumes of spam, which he collects and then organizes for use in his prolific lawsuits. He admits setting up domains as "spam traps" with the sole purpose of snagging as many e-mail marketing messages as possible."

*Id*. at 1056. According to the Ninth Circuit, "lawmakers were wary of the possibility, if not the likelihood, that the siren song of substantial statutory damages would entice opportunistic plaintiffs to join the fray, which would lead to undesirable results." *Id*. at 1050. Thus, the Ninth Circuit concluded that "[i]t is readily apparent that…an individual who seeks out spam for the very purpose of filing lawsuits, is not the type of private plaintiff that Congress had in mind when it fashioned § 7706(g)(1)'s standing provision." *Id*. at 1055.

Plaintiffs' e-mail harvesting was self-imposed and purposefully undertaken, destroying their standing claim. As in *Virtumundo*, Haselton, the self described "spammer-suer," made no real effort to avoid, block, or delete e-mail, but instead expends considerable time and resources seeking out and capturing spam, which he then organizes for use in his prolific lawsuits. Haselton has brought over 140 spam-related cases and been awarded thousands of dollars in default judgments. *See* Haselton Dep. at 8:21-9:8; Dkt. 26, Exh. I. Plaintiffs do not use any e-mail filtering program and, in fact, configure their e-mail program to accept as many e-mails as possible, including for addresses that do not exist. *Id*. 74:24-75:4, 109:22-110:24; Dkt. 26, Exh. J. Plaintiffs voluntarily click on links in e-mails, enter fake contact information, and even set up addresses as "spam traps" with the sole purpose of snagging as many e-mails as possible. *See* Haselton Dep. 16-21, 42:2-11, 60:16-62:9, 65:8-23, 69:20-70:8, 70:18-71:10, 75:21-76:4, 105:21-106:10; Dkt. 26, Exhs. M, N, O, P. As the Ninth Circuit held in *Virtumundo*, it is readily apparent that Haselton, an individual who seeks out spam to fuel prolific litigation, is not the

MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION
FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b) - 11
Case No. C07-1777 RSL

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

type of plaintiff to whom Congress intended courts to grant standing. *See* 575 F.3d at 1055-56.

Plaintiffs' reliance on third party IASs to provide its services also substantially undercuts their claim of harm. The Ninth Circuit gave significant weight to a plaintiff's reliance on third parties when analyzing whether the plaintiff was sufficiently harmed.[5] The Court held that "given [plaintiff's] heavy dependence on the services and hardware of third parties, it would be difficult, <u>if not impossible</u>, for him to incur many of these harms." *Id*. at 1056 (emphasis added). Just like the *Virtumundo* plaintiff, Haselton does not own, possess, or operate any of his servers. Haselton Dep. 85:813, 86:2-87:6, 88:12-14. The cable connection to Haselton's apartment, which doubles as the Peacefire office, is provided by Verizon. *Id*. at 38:15-21. Haselton's e-mail service is provided by Speakeasy, Inc.; all peacefire.org e-mails are forwarded to a speakeasy.net address. *Id.* at 36:20-37:2, 38:9-25. As in *Virtumundo*, while these third party IAS providers might have standing, Haselton does not. *See Virtumundo* at 1056.

### C. Alternatively, Defendant Can File A Supplemental Brief After Additional Discovery.

In light of *Virtumundo's* restrictive standing test, and the fact that it is Plaintiffs' burden to show standing and by extension subject matter jurisdiction, no question should remain on the standing issue. However, if the Court concludes that the prior record is somehow insufficient, this may be addressed through additional discovery with the benefit of *Virtumundo*'s guidance on the legal tests at issue, followed by additional briefing. The Ninth Circuit in *Virtumundo* outlined specific requirements that a Plaintiff must meet in order to satisfy the CAN-SPAM Act's standing requirements. Obviously Defendant did not have the benefit of this guidance during standing briefing and discovery. With such guidance, Defendant could conduct additional discovery of the factors *Virtumundo* emphasized.[6] Defendant could then submit additional briefing on the standing question.

---

[5] *Id*. at 1057; *see also* 1055-1056.
[6] Such as (1) whether Plaintiffs secured adequate bandwidth; (2) whether Plaintiffs secured adequate storage capacity; (3) what, if any, precautions Plaintiffs took to prevent the harms alleged; and (4) whether there is any demonstrated relationship between Plaintiffs' purported harms and their receipt of violative e-mails.

MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION
FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b) - 12
Case No. C07-1777 RSL

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

## V. CONCLUSION

Based on the foregoing, Defendant requests that this Court dismiss Plaintiffs' claims for lack of standing under the CAN-SPAM Act. Alternatively, if the Court concludes that the present record is somehow insufficient, Defendant requests that the Court vacate its prior Order, and that this issue be revisited after further discovery and the submission of new briefing.

DATED this 28th day of January, 2010.

DORSEY & WHITNEY LLP

*/s/ James E. Howard*
JAMES E. HOWARD, WSBA #37259
STEPHANIE L. BEERS, WSBA #39337
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
Telephone: (206) 903-8800
Facsimile: (206) 903-8820

Attorneys for Defendant Quicken Loans, Inc.

MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b) - 13
Case No. C07-1777 RSL

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820

# CERTIFICATE OF SERVICE

I hereby certify that on this date I filed the foregoing with the United States District Court Clerk, Western District of Washington at Seattle, using the ECF filing system, which sent an email notification of this filing to the below-listed counsel of record:

**Robert J. Siegel**
bob@ijusticelaw.com

**Douglas E. McKinley**
doug@mckinleylaw.com

Dated this 28th day of January, 2010.

*/s/ Michelle F. Hall*
MICHELLE F. HALL

MOTION FOR DISMISSAL PURSUANT TO FRCP 56 AND 12(c), AND MOTION FOR RELIEF FROM AN ORDER PURSUANT TO FRCP 60(b) - 14
Case No. C07-1777 RSL
4835-7346-6885\3

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WA 98104-7043
PHONE: (206) 903-8800
FAX: (206) 903-8820