THE HON ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **BENNETT HASELTON, an individual; PEACEFIRE, INC., a Washington corporation,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**QUICKEN LOANS, INC, a California corporation; and JOHN DOES, I-X,**<br><br>**Defendants.** | **NO. CVO7-1777**<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF STANDING**<br><br>**[NOTE FOR HEARING: Feb. 19, 2010]**<br><br>[**JURY DEMAND**] |

**INTRODUCTION**

On October 14, 2008, this Court ruled that Plaintiff's Peacefire and Haselton (collectively "Peacefire") had standing to bring claims under the CAN SPAM Act, 15 USC §§ 7701 et seq., (the "CSA") (Dkt. 29).

The unlawful nature of the spam emails at issue has never been contested. The spam emails violate the CSA for multiple reasons, including a failure to identify anyone associated with sending the emails, the use of fraudulent header information, and a failure to provide a consumer with a working mechanism to opt out of receiving future emails.

**i.JUSTICE LAW, PC**
**PO Box 25817**
**Seattle, WA 98165-1317**
**Phone/Fax: 888-839-3299**

Quicken's responsibility for the spam emails also cannot rationally be disputed. Quicken clearly used information gleaned from the spam emails to contact Haselton in an attempt to sell Haselton loans. It has therefore always been crystal clear that Quicken was the party that benefited economically from the spam emails. Finally, Quicken's knowledge that the spam emails were illegal was also never in doubt. Haselton put Quicken on notice of the illegal nature of these spam emails on multiple occasions when Quicken made contact with Haselton. Moreover, Quicken had previously been sued for the exact same spam email scheme by another party in California. Accordingly, Quicken's one and only hope for evading its responsibility for the spam emails was to convince a Court to deny Peacefire standing to bring his claims. Quicken has now failed twice to do so, but seeks once again to do just that with the instant motion.

Prior to Defendant filing the instant motion, in light of the *Virtumundo* holding by the Ninth Circuit, the Plaintiff offered to enter into a stipulated dismissal with prejudice of this case if the Defendant would agree not to seek attorney fees. The Defendant agreed, and accepted the Plaintiff's offer. Defendant then reneged on that agreement. Accordingly, the Court should dismiss this case with prejudice, but not because Plaintiff lacks standing under the CSA. Rather, the Court should dismiss this case with prejudice to enforce the party's prior agreement, thereby rendering Defendant's motion to dismiss on standing moot.

On August 6, 2009, the Ninth Circuit Court of Appeals rendered its decision in *Gordon v. Virtumundo,* 575 F.3d 1040 (9th Cir. 2009) **.** The *Virtumundo* decision did little to alter the standing analysis that had been articulated by the Judge Coughenour at the trail court level. This analysis was fully briefed by both sides during defendant's prior motions to dismiss for lack of standing. Notably, the facts as set forth in Defendant's instant motion are flatly refuted by the exhibits and briefing in these prior motions. To cite but one example, Defendants claim that

**i.JUSTICE LAW, PC**
**PO Box 25817**
**Seattle, WA 98165-1317**
**Phone/Fax: 888-839-3299**

Peacefire deliberately invited the spam at issue in this case. Nothing could be further from the truth. In actuality, as set forth in the prior briefing, before initiating this lawsuit Plaintiff repeatedly contacted Defendant and requested that Defendant stop Defendant's agents from sending Plaintiff illegal spam, but Defendant refused to do so.

Accordingly, this Court has already seen that the numerous allegations of "fact" set forth in Defendant's motion are false, and this Court has already considered the factors raised in the *Virtumundo* decision when analyzing Plaintiff's standing under the CSA in Defendant's prior motions. The *Virtumundo* decision does little or nothing to change that prior analysis. In the event that the Court considers the merits of Defendant's challenge to standing, the Court should re-consider the arguments and facts set forth in Plaintiff's briefing in these prior motions. See Dkt. 11, 21 and 27. The allegations set forth in Defendant's instant motion are flatly refuted by the exhibits and briefing in these prior motions, and the Court's prior conclusions of law completely withstand the Virtumundo decision.

At the same time, the *Virtumundo* decision made it much more difficult to assert claims under the Washington State Commercial Electronic Mail Act (CEMA). As a result, the amount at issue in the present controversy changed substantially. Almost immediately following the issuance of the *Virtumundo* decision, undersigned counsel promptly contacted Defendant's counsel and offered to enter into a stipulated dismissal with prejudice of this case if Defendant would agree not to seek attorney fees. Defendant accepted the Plaintiff's offer. (See declaration of Douglas E. McKinley, Jr. submitted herewith) Defendant later memorialized their agreement to these terms in a letter drafted by Defense counsel, dated 12/29/2009, which they sent to Plaintiff. (See Exhibit "A" to the declaration of Douglas E. McKinley, Jr. submitted herewith) In pertinent part, that letter, signed by Defendant's counsel Mr. Howard, states:

**i.JUSTICE LAW, PC**
**PO Box 25817**
**Seattle, WA 98165-1317**
**Phone/Fax: 888-839-3299**

> Indeed, when Doug called me some months ago to discuss settlement, I told him the most Quicken Loans would authorize was a dismissal with prejudice, without any payment, but it would agree not to seek attorney's fees from Mr. Haselton. Doug's reply to this offer was: "deal." … While I would rather not litigate the issue, under governing case law the original "deal" would ultimately be enforceable. *See e.g.,* Levine v. Green, 106 Wn. App. 12 (2001).

Subsequently, however, instead of simply entering a stipulated dismissal as they had agreed, Defendant then began a long campaign of making additional demands to Plaintiff. These additional demands included the demand that Plaintiff agree to a variety of ongoing obligations that Plaintiff would owe to Defendant indefinitely into the future, a demand that Plaintiff pay Defendant's attorney fees if Plaintiff ever failed to live up to any of these additional ongoing obligations, and a demand to dismiss any and all claims completely unrelated to the instant lawsuit that Plaintiff may otherwise have against Defendant.

While Plaintiff never agreed to those additional demands, Plaintiff, in good faith, attempted to negotiate mutually agreeable terms to accommodate Defendant's additional demands. However, Defendant was unwilling to make any concessions that would compensate Plaintiff for agreeing to any of Defendant's additional demands, and the parties were unable to reach agreement on Defendant's additional demands.

Once these negotiations had proven fruitless, Plaintiff again made the request that Defendant simply honor the party's prior agreement and enter a stipulated dismissal with prejudice. Toward that end, on 12/31/2009, Plaintiff sent Defendant a draft stipulated dismissal

**i.JUSTICE LAW, PC**
**PO Box 25817**
**Seattle, WA 98165-1317**
**Phone/Fax: 888-839-3299**

with prejudice together with correspondence insisting that Defendant enter that stipulated dismissal with prejudice, as the parties had previously agreed. In pertinent part, that correspondence, authored by Plaintiff's counsel Doug McKinley, states:

> Nevertheless, as set forth in your letter of December 29, 2009, there are two points that you apparently regard as having been agreed to, and binding under the authority you have cited (Lavigne v. Green, 106 Wn. App. 12 (2001)). These are that Plaintiffs have agreed to dismiss the case with prejudice, and Defendant has agreed not to seek attorney fees. Accordingly, while we have come to believe it is futile to continue to negotiate a formal, written, settlement agreement, we will consider your letter as your client's offer to treat those two points as binding.
>
> As such, please find enclosed a stipulated dismissal with prejudice. Please fill in the appropriate dates, add your name to the certificate of service, and file it with the Court prior to the status update currently set for January 4. By virtue of your letter of December 29, 2009, and the language contained within the stipulated dismissal, your client will thereby be obligated to refrain from bringing a motion for attorney fees. In the event your client does bring such a motion, we will of course contest that motion, include your letter in our response, and bring our own motion for sanctions.
>
> The parties will then have no further obligations toward one and another, including without limitation, signing any formal settlement agreements, and/or any of the obligations set forth in any of the terms and conditions of the various settlement proposals that have been circulated, all of which have since been rejected either by your client or by ours. (Attached to Declaration of Douglas E. McKinley, Jr. as Exhibit "B")

**i.JUSTICE LAW, PC**
**PO Box 25817**
**Seattle, WA 98165-1317**
**Phone/Fax: 888-839-3299**

But, instead of entering the stipulated dismissal with prejudice (as it had agreed to do months before), Defendant reneged on the party's agreement, refused to enter the stipulated dismissal with prejudice, and continued the litigation, ultimately filing this spurious Motion.

It should be obvious to the Court what is going on. Defendant is needlessly prolonging the litigation in a transparent attempt to position the case to allow themselves the opportunity to make a request for attorney fees. The Court should see through this ruse, and not allow them that opportunity. Instead, the Court should enforce the parties' Agreement, dismiss the claims with prejudice, and strike Defendant's motion for dismissal on the basis of standing as moot. Further, should Defendant make a subsequent motion for attorney's fees, the Court should deny that motion, and instead award the Plaintiff their attorney fees under FRCP 11.

## CONCLUSION

For the foregoing reasons, this Court should deny Quicken's Motion, and allow Plaintiff to voluntarily dismiss this action pursuant to the Agreement between the parties.

**Respectfully Submitted**, this 15th day of February, 2010

| i.JUSTICE LAW, P.C. | DOUGLAS E. MCKINLEY, JR<br>Attorney at Law |
| --- | --- |
| /S/ Robert J. Siegel | /S/ Douglas E. McKinley, Jr. |
| Robert J. Siegel, WSBA #17312 | Douglas E. McKinley, Jr., WSBA#20806 |
| Attorney for Plaintiffs | Attorney for Plaintiffs |

**i.JUSTICE LAW, PC**
**PO Box 25817**
**Seattle, WA 98165-1317**
**Phone/Fax: 888-839-3299**

## Certificate of Service

I hereby certify that on Feburary 15, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record herein.

**i.Justice Law, P.C.**

By: /s/ Robert J. Siegel
Robert J. Siegel
Washington Bar No. 17312
PO Box 25817
Seattle, WA 98165-1317
Telephone/Fax: 888-839-3299
Bob@ijusticelaw.com

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DIMSISS** - 7
*HASELTON v.QUICKEN LOANS, INC.*

**i.JUSTICE LAW, PC**
**PO Box 25817**
**Seattle, WA 98165-1317**
**Phone/Fax: 888-839-3299**