UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BENNETT HASELTON, *et al.*,

    Plaintiffs,

    v.

QUICKEN LOANS, INC., *et al.*,

    Defendants.

Case No. C07-1777RSL

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on defendants' motion for partial summary judgment. In a previous order, the Court granted plaintiffs' motion for partial summary judgment and held that plaintiffs have standing to pursue a claim under the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act"), 15 U.S.C. § 7701 *et. seq.* Since then, the Ninth Circuit Court of Appeals has issued a ruling in a similar case that has clarified the requirements for standing under the CAN-SPAM Act. In light of that intervening authority, the Court now reconsiders the issue of plaintiffs' standing.

Although defendants did not style their motion as one for partial summary judgment, they have sought dismissal only of plaintiffs' CAN-SPAM Act claim. Their

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1

1  motion does not address plaintiffs' claim under Washington's Commercial Electronic
2  Marketing Act ("CEMA"), RCW 19.190, *et. seq.*[1]
3      For the reasons set forth below, the Court grants defendants' motion for partial
4  summary judgment. Because the matter can be decided based on the parties' memoranda
5  and supporting documents, defendants' request for oral argument is denied.

## II.  ANALYSIS

7      Defendants are Quicken Loans, Inc. and "John Does I-X." Plaintiff Peacefire, Inc.
8  hosts websites and provides programs that allow Internet users to circumvent Internet
9  blocking software and access blocked Internet content. Internet users can access
10 Peacefire's programs by visiting its web site or by subscribing to Peacefire's e-mail list.
11 In November 2007, plaintiffs filed suit against defendants in this Court.
12     After this Court found that plaintiffs had standing, it stayed the case at defendants'
13 request to permit them to appeal the issue. While their appeal was pending, the Ninth
14 Circuit decided *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009). The Ninth
15 Circuit stayed the appeal in this case pending its decision in *Gordon*. Once it decided
16 *Gordon*, the Ninth Circuit denied defendants' request for permission to appeal.
17     The *Gordon* opinion provided significant guidance regarding the standing
18 requirements in an area where the case law was scant. Prior to *Gordon*, the Ninth Circuit
19 had not opined regarding what constituted an "Internet access service" ("IAS"), an
20 important term used in the CAN-SPAM Act. This Court, in finding that plaintiffs had
21 standing, noted that district courts in this circuit had applied a broad definition. Dkt. #29

---

[1] Although plaintiffs' complaint also asserted a claim under Washington's Consumer Protection Act, that claim does not appear in the parties' Joint Status Report and it appears that plaintiffs have abandoned it.

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2

at p. 4 (citing MySpace, Inc. v. The Globe.com, Inc., No. 06-3391, 2007 WL 1686966 (C.D. Cal. Feb. 27, 2007) (finding that the term IAS "includes traditional Internet Service Providers . . . , any email provider, and even most website owners"); Gordon v. Virtumundo, Inc., Case No. 06-0204JCC, 2007 WL 1459395 at * 8 (W.D. Wash. May 15, 2007) (finding it "fairly clear that Plaintiffs are, in the most general terms, a 'service that enables users to access' Internet content and e-mail," which qualified them as an Internet access provider under the Act's "capacious definition")). Given that *Gordon* has provided binding authority on an issue about which the Ninth Circuit had not previously opined, the Court now reconsiders whether plaintiffs have standing. See, e.g., Thomas v. Bible, 983 F.2d 152, 155 (9th Cir. 1993) (explaining that district courts have discretion to revisit an issue if there has been an intervening change in the law).

As an initial matter, the Court notes that plaintiffs' response to defendants' motion does not substantively address the standing requirements, defendants' arguments, or the *Gordon* decision. Instead, plaintiffs repeatedly state, in conclusory fashion, that their prior briefing addresses defendants' arguments. That contention is misguided. The Court is not required to comb through the record to find arguments and evidence that might support plaintiffs' position. See, e.g., Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030-31 (2001) (explaining that Rule 56 requires a party opposing summary judgment to set forth specific fact establishing a genuine issue of fact); Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988) (explaining that a district court is "not required to comb the record to find some reason to deny a motion for summary judgment."). Moreover, plaintiffs' prior briefing was filed before the Ninth Circuit issued its decision in *Gordon*, so it is therefore wholly ineffective in addressing the issue currently before the Court: whether plaintiffs have standing in light of that decision.

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3

1  Rather than addressing the matter at hand, plaintiffs devote most of their
2  memorandum to arguing that the parties agreed to settle this case, so the Court should
3  enforce the settlement rather than grant defendants' motion. The evidence in the record
4  does not show that, as a matter of law, the parties settled the case. Rather, it shows that
5  while the parties were attempting to reach a settlement, each side sought new settlement
6  terms that were not accepted, including a "global release" term sought by defendants and
7  a $20,000 payment term demanded by plaintiffs. Accordingly, the Court will not find that
8  the parties reached a settlement agreement.
9  Having found that no settlement existed, the Court turns to the merits of the
10 standing issue. Congress intended the CAN-SPAM Act to be enforced primarily by the
11 Federal Trade Commission ("FTC") rather than by individual consumers. See 15 U.S.C.
12 § 7706(a). The statute recognizes a limited cause of action for state attorneys general and
13 certain private entities. 15 U.S.C. § 7706. "Once it is determined that a private cause of
14 action exists, the question of standing . . . is decided by judging whether the interest
15 sought to be protected by the complainant is arguably within the zone of interests to be
16 protected or regulated by the statute in question." California Cartage Co., Inc. v. United
17 States, 721 F.2d 1199, 1203 (9th Cir. 1983). The CAN-SPAM Act protects the interests
18 of plaintiffs that are (1) "provider[s] of Internet access service" and (2) "adversely
19 affected" by a violation of specific provisions of the Act. See 15 U.S.C. § 7706(g)(1).
20 Defendants argue that plaintiffs do not meet either part of the test.
21 Section 7702(11) of the CAN-SPAM Act defines the term "Internet access
22 service" by reference to 47 U.S.C. § 231(e)(4). In turn, section 231(e)(4) defines an IAS
23 as "a service that enables users to access content, information, electronic mail, or other
24 services offered over the Internet, and may also include access to proprietary content,
25
26 ORDER GRANTING MOTION FOR
   PARTIAL SUMMARY JUDGMENT - 4

1 information, and other services as part of a package of services offered to consumers.
2 Such term does not include telecommunications services." Prior to *Gordon*, the Ninth
3 Circuit had not addressed who was an IAS within the meaning of the statute. In *Gordon*,
4 the Ninth Circuit noted that district courts had interpreted the term too broadly and in a
5 manner inconsistent with the intent of Congress. *Gordon*, 575 F.3d at 1051. Although
6 the court declined to set forth a test for what it means to be an IAS, it found that the
7 plaintiff was not an IAS based on the facts in that case. Specifically, Gordon did not have
8 physical control over nor access to the hardware, and another third party enabled his
9 online access. Therefore, Gordon, like plaintiffs in this case, had no more than a
10 "nominal role in providing Internet-related services." Id. at 1052.

11 Moreover, the Ninth Circuit also stressed that only *bona fide* IAS providers have
12 standing under the statute. Gordon, 575 F.3d at 1050. The court noted that Gordon did
13 not qualify because he "purposefully avoided taking even minimal efforts to avoid or
14 block spam messages." Id. at 1052; id. at 1054 ("We expect a legitimate service provider
15 to secure adequate bandwidth and storage capacity and take reasonable precautions, such
16 as implementing spam filters, as part of its normal operations."). Similarly, in this case,
17 plaintiffs made no effort to avoid spam. They did not use any e-mail filtering programs.
18 Haselton Dep. at pp. 109-110. In fact, to grow his spam litigation business, Haselton
19 configured his e-mail program to collect all e-mails sent to the peacefire.org domain. Id.
20 at pp. 74-75; Declaration of Alexander Baehr, (Dkt. #26), Ex. J. Like Gordon, plaintiffs
21 in this case are not *bona fide* IAS providers. Accordingly, they lack standing to pursue a
22 claim under the CAN-SPAM Act.

23 Even if plaintiffs could show that they are *bona fide* IAS providers, they lack
24 standing because they have not been adversely affected by a violation of the Act. The

1   Act does not define the term "adversely affected." Plaintiffs contend that defendants'
2   spam has reduced their network speeds, impaired their ability to notify subscribers about
3   new ways to access services, and required them to increase server and memory capacity.
4   Declaration of Bennett Haselton, (Dkt. #13) at ¶ 19 ("The amount of spam that we receive
5   directly impedes the responsiveness of our server and our ability to communicate with our
6   subscribers to send them the locations of new proxy servers"); id. at ¶ 20 (explaining that
7   as a result of spam, "the mail that we attempt to send to our subscribers, and the mail that
8   business contacts attempt to send us, is sent more slowly, with random delays, and
9   sometimes does not get sent at all"); id. at ¶ 25 (citing additional costs associated with
10  purchasing additional server memory to deal with the high volume of spam). Although
11  plaintiffs contend that the receipt of spam has harmed them, they have not addressed the
12  fact that they have failed to take reasonable precautions to filter out the allegedly
13  unwanted communications. Based on the record, it appears that the harms that plaintiffs
14  have suffered are the result of their spam collection efforts in furtherance of their
15  litigation business, rather than harms incurred in operating as *bona fide* IAS providers.
16  Gordon, 575 F.3d at 1056 (explaining that because plaintiff made no real effort to block
17  the spam, its claimed harms related to "litigation preparation" rather than IAS related
18  harms); id. at 1057 (explaining that the "burdens Gordon complains of are almost
19  exclusively self-imposed and purposefully undertaken."). Similarly, in this case,
20  plaintiffs have not been adversely affected by any alleged violation of the CAN-SPAM
21  Act. Rather, they have been harmed, if at all, by their own failure to implement spam-
22  reducing measures and their actions to actively seek out such communications.
23  Accordingly, plaintiffs lack standing to pursue a claim under the CAN-SPAM Act.

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 6

### III.  CONCLUSION

For all of the foregoing reasons, defendants' motion for partial summary judgment (Dkt. #50) is GRANTED.

DATED this 23rd day of March, 2010.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7