1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

BENNETT HASELTON, *et al.*,

9

Plaintiffs,

10

v.

11

QUICKEN LOANS, INC., *et al.*,

12

Defendants.

13

Case No.  C07-1777RSL

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT

14
15

## I.  INTRODUCTION

16

        This matter comes before the Court on defendants' motion for partial summary

17

judgment.  In a previous order, the Court granted plaintiffs' motion for partial summary

18

judgment and held that plaintiffs have standing to pursue a claim under the Controlling

19

the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM

20

Act"), 15 U.S.C. § 7701 *et. seq.*  Since then, the Ninth Circuit Court of Appeals has

21

issued a ruling in a similar case that has clarified the requirements for standing under the

22

CAN-SPAM Act.  In light of that intervening authority, the Court now reconsiders the

23

issue of plaintiffs' standing.

24

        Although defendants did not style their motion as one for partial summary

25

judgment, they have sought dismissal only of plaintiffs' CAN-SPAM Act claim.  Their

26

1   motion does not address plaintiffs' claim under Washington's Commercial Electronic

2   Marketing Act ("CEMA"), RCW 19.190, *et. seq.*[1]

3        For the reasons set forth below, the Court grants defendants' motion for partial

4   summary judgment.  Because the matter can be decided based on the parties' memoranda

5   and supporting documents, defendants' request for oral argument is denied.

6                                    **II.  ANALYSIS**

7        Defendants are Quicken Loans, Inc. and "John Does I-X."  Plaintiff Peacefire, Inc.

8   hosts websites and provides programs that allow Internet users to circumvent Internet

9   blocking software and access blocked Internet content.  Internet users can access

10  Peacefire's programs by visiting its web site or by subscribing to Peacefire's e-mail list.

11  In November 2007, plaintiffs filed suit against defendants in this Court.

12       After this Court found that plaintiffs had standing, it stayed the case at defendants'

13  request to permit them to appeal the issue.  While their appeal was pending, the Ninth

14  Circuit decided *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009).  The Ninth

15  Circuit stayed the appeal in this case pending its decision in *Gordon*.  Once it decided

16  *Gordon*, the Ninth Circuit denied defendants' request for permission to appeal.

17       The *Gordon* opinion provided significant guidance regarding the standing

18  requirements in an area where the case law was scant.  Prior to *Gordon*, the Ninth Circuit

19  had not opined regarding what constituted an "Internet access service" ("IAS"), an

20  important term used in the CAN-SPAM Act.  This Court, in finding that plaintiffs had

21  standing, noted that district courts in this circuit had applied a broad definition.  Dkt. #29

22

23  ─────────────────────

24       [1] Although plaintiffs' complaint also asserted a claim under Washington's
    Consumer Protection Act, that claim does not appear in the parties' Joint Status Report

25  and it appears that plaintiffs have abandoned it.

26  ORDER GRANTING MOTION FOR
    PARTIAL SUMMARY JUDGMENT - 2

at p. 4 (citing <u>MySpace, Inc. v. The Globe.com, Inc.</u>, No. 06-3391, 2007 WL 1686966 (C.D. Cal. Feb. 27, 2007) (finding that the term IAS "includes traditional Internet Service Providers . . . , any email provider, and even most website owners"); <u>Gordon v. Virtumundo, Inc.</u>, Case No. 06-0204JCC, 2007 WL 1459395 at * 8 (W.D. Wash. May 15, 2007) (finding it "fairly clear that Plaintiffs are, in the most general terms, a 'service that enables users to access' Internet content and e-mail," which qualified them as an Internet access provider under the Act's "capacious definition")).  Given that *Gordon* has provided binding authority on an issue about which the Ninth Circuit had not previously opined, the Court now reconsiders whether plaintiffs have standing.  <u>See, e.g.</u>, <u>Thomas v. Bible</u>, 983 F.2d 152, 155 (9th Cir. 1993) (explaining that district courts have discretion to revisit an issue if there has been an intervening change in the law).

As an initial matter, the Court notes that plaintiffs' response to defendants' motion does not substantively address the standing requirements, defendants' arguments, or the *Gordon* decision.  Instead, plaintiffs repeatedly state, in conclusory fashion, that their prior briefing addresses defendants' arguments.  That contention is misguided.  The Court is not required to comb through the record to find arguments and evidence that might support plaintiffs' position.  <u>See, e.g.</u>, <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1030-31 (2001) (explaining that Rule 56 requires a party opposing summary judgment to set forth specific fact establishing a genuine issue of fact); <u>Forsberg v. Pac. Nw. Bell Tel. Co.</u>, 840 F.2d 1409, 1418 (9th Cir. 1988) (explaining that a district court is "not required to comb the record to find some reason to deny a motion for summary judgment.").  Moreover, plaintiffs' prior briefing was filed before the Ninth Circuit issued its decision in *Gordon*, so it is therefore wholly ineffective in addressing the issue currently before the Court: whether plaintiffs have standing in light of that decision.

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3

1      Rather than addressing the matter at hand, plaintiffs devote most of their

2   memorandum to arguing that the parties agreed to settle this case, so the Court should

3   enforce the settlement rather than grant defendants' motion.  The evidence in the record

4   does not show that, as a matter of law, the parties settled the case.  Rather, it shows that

5   while the parties were attempting to reach a settlement, each side sought new settlement

6   terms that were not accepted, including a "global release" term sought by defendants and

7   a $20,000 payment term demanded by plaintiffs.  Accordingly, the Court will not find that

8   the parties reached a settlement agreement.

9      Having found that no settlement existed, the Court turns to the merits of the

10  standing issue.  Congress intended the CAN-SPAM Act to be enforced primarily by the

11  Federal Trade Commission ("FTC") rather than by individual consumers.  See 15 U.S.C.

12  § 7706(a).  The statute recognizes a limited cause of action for state attorneys general and

13  certain private entities.  15 U.S.C. § 7706.  "Once it is determined that a private cause of

14  action exists, the question of standing . . . is decided by judging whether the interest

15  sought to be protected by the complainant is arguably within the zone of interests to be

16  protected or regulated by the statute in question."  California Cartage Co., Inc. v. United

17  States, 721 F.2d 1199, 1203 (9th Cir. 1983).  The CAN-SPAM Act protects the interests

18  of plaintiffs that are (1) "provider[s] of Internet access service" and (2) "adversely

19  affected" by a violation of specific provisions of the Act.  See 15 U.S.C. § 7706(g)(1).

20  Defendants argue that plaintiffs do not meet either part of the test.

21     Section 7702(11) of the CAN-SPAM Act defines the term "Internet access

22  service" by reference to 47 U.S.C. § 231(e)(4).  In turn, section 231(e)(4) defines an IAS

23  as "a service that enables users to access content, information, electronic mail, or other

24  services offered over the Internet, and may also include access to proprietary content,

25

26  ORDER GRANTING MOTION FOR
    PARTIAL SUMMARY JUDGMENT - 4

1   information, and other services as part of a package of services offered to consumers.

2   Such term does not include telecommunications services."  Prior to *Gordon*, the Ninth

3   Circuit had not addressed who was an IAS within the meaning of the statute.  In *Gordon*,

4   the Ninth Circuit noted that district courts had interpreted the term too broadly and in a

5   manner inconsistent with the intent of Congress.  *Gordon*, 575 F.3d at 1051.  Although

6   the court declined to set forth a test for what it means to be an IAS, it found that the

7   plaintiff was not an IAS based on the facts in that case.  Specifically, Gordon did not have

8   physical control over nor access to the hardware, and another third party enabled his

9   online access.  Therefore, Gordon, like plaintiffs in this case, had no more than a

10  "nominal role in providing Internet-related services."  Id. at 1052.

11      Moreover, the Ninth Circuit also stressed that only *bona fide* IAS providers have

12  standing under the statute.  Gordon, 575 F.3d at 1050.  The court noted that Gordon did

13  not qualify because he "purposefully avoided taking even minimal efforts to avoid or

14  block spam messages."  Id. at 1052; id. at 1054 ("We expect a legitimate service provider

15  to secure adequate bandwidth and storage capacity and take reasonable precautions, such

16  as implementing spam filters, as part of its normal operations.").  Similarly, in this case,

17  plaintiffs made no effort to avoid spam.  They did not use any e-mail filtering programs.

18  Haselton Dep. at pp. 109-110.  In fact, to grow his spam litigation business, Haselton

19  configured his e-mail program to collect all e-mails sent to the peacefire.org domain.  Id.

20  at pp. 74-75; Declaration of Alexander Baehr, (Dkt. #26), Ex. J.  Like Gordon, plaintiffs

21  in this case are not *bona fide* IAS providers.  Accordingly, they lack standing to pursue a

22  claim under the CAN-SPAM Act.

23      Even if plaintiffs could show that they are *bona fide* IAS providers, they lack

24  standing because they have not been adversely affected by a violation of the Act.  The

25

26  ORDER GRANTING MOTION FOR
    PARTIAL SUMMARY JUDGMENT - 5

1   Act does not define the term "adversely affected."  Plaintiffs contend that defendants'

2   spam has reduced their network speeds, impaired their ability to notify subscribers about

3   new ways to access services, and required them to increase server and memory capacity.

4   Declaration of Bennett Haselton, (Dkt. #13) at ¶ 19 ("The amount of spam that we receive

5   directly impedes the responsiveness of our server and our ability to communicate with our

6   subscribers to send them the locations of new proxy servers"); id. at ¶ 20 (explaining that

7   as a result of spam, "the mail that we attempt to send to our subscribers, and the mail that

8   business contacts attempt to send us, is sent more slowly, with random delays, and

9   sometimes does not get sent at all"); id. at ¶ 25 (citing additional costs associated with

10  purchasing additional server memory to deal with the high volume of spam).  Although

11  plaintiffs contend that the receipt of spam has harmed them, they have not addressed the

12  fact that they have failed to take reasonable precautions to filter out the allegedly

13  unwanted communications.  Based on the record, it appears that the harms that plaintiffs

14  have suffered are the result of their spam collection efforts in furtherance of their

15  litigation business, rather than harms incurred in operating as *bona fide* IAS providers.

16  Gordon, 575 F.3d at 1056 (explaining that because plaintiff made no real effort to block

17  the spam, its claimed harms related to "litigation preparation" rather than IAS related

18  harms); id. at 1057 (explaining that the "burdens Gordon complains of are almost

19  exclusively self-imposed and purposefully undertaken.").  Similarly, in this case,

20  plaintiffs have not been adversely affected by any alleged violation of the CAN-SPAM

21  Act.  Rather, they have been harmed, if at all, by their own failure to implement spam-

22  reducing measures and their actions to actively seek out such communications.

23  Accordingly, plaintiffs lack standing to pursue a claim under the CAN-SPAM Act.

24

25

26  ORDER GRANTING MOTION FOR
    PARTIAL SUMMARY JUDGMENT - 6

1

## III.  CONCLUSION

2        For all of the foregoing reasons, defendants' motion for partial summary judgment

3 (Dkt. #50) is GRANTED.

4

5        DATED this 23rd day of March, 2010.

6

7

8                                  *Robert S. Lasnik*

                                   Robert S. Lasnik

9                                   United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7